UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN GAUTREAUX — CIVIL ACTION

VERSUS — NO: 12-2851

TRINITY TRADING GROUP, LTD. ET AL. — SECTION: "A" (5)

**ORDER AND REASONS**

The following motions are before the Court: **Motion for Partial Summary Judgment on Vessel Status (Rec. Doc. 90)**, filed by defendant Trinity Trading Group, Ltd.; **Cross Motion for Partial Summary Judgment on Vessel Status (Rec. Doc. 96),** filed by plaintiff Sean Gautreaux. The motions, set for hearing on January 15, 2014, are opposed and are before the Court on the briefs without oral argument.[1]

**I. BACKGROUND**

Plaintiff Sean Gautreaux was employed by defendant Trinity Trading Group, Ltd., working as a deckhand/supervisor trainee on the Louisiana Midstream One ("LMO"), a non-self-propelled barge equipped with a conveyor system that performs midstream cargo

[1] Oral argument has been requested but the Court is not persuaded that oral argument would be helpful in light of the issues presented.

transfer operations on the Mississippi River. Plaintiff alleges that he was injured in the course of his employment on October 16, 2011, when a mooring line connecting a coal barge to the LMO snapped and struck his body. Plaintiff filed this action against Trinity and other defendants to recover damages under the Jones Act and general maritime law for the personal injuries he alleges to have suffered as a result of the accident.

Before the Court are cross motions for summary judgment on the issue of vessel status. Trinity seeks dismissal of Plaintiff's Jones Act claims predicated on the alleged vessel status of the LMO, whereas Plaintiff seeks to establish the LMO as a vessel as a matter of law.

**II. DISCUSSION**

Summary Judgment is appropriate only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."[2] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could

[2] *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).

return a verdict for the non-moving party.[3] Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause,"[4] the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.[5] Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.[6]

A "vessel" is statutorily defined as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."[7] The Supreme Court has stated that this includes “any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment.”[8] Therefore,

---

[3]*Id.* (*citing Anderson*, 477 U.S. at 255).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[5]*Id.* (*citing* Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6]*Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

[7]1 U.S.C. § 3.

[8]*Stewart v. Dutra Construction Co.*, 543 U.S. 481, 497 (2005).

for a watercraft to be classified as a vessel, its primary purpose need not be navigation or transportation, nor must it be in motion at the time one sustains an injury.[9] The Supreme Court has specified that the relevant inquiry in determining vessel status is "whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one."[10]

The Supreme Court recently offered additional guidance for courts to consider in “borderline cases where ‘capacity’ to transport over water is in doubt.”[11] Considering only objective evidence of a waterborne transportation purpose, the Supreme Court held that a watercraft is not practically capable of maritime transportation "unless a reasonable observer, looking to the [watercraft's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water."[12]

The LMO is a non-self-propelled barge containing cargo handling equipment which it uses to transfer coal and other

---

[9]*Id.* at 495–96.

[10]*Id.* at 496.

[11]*Lozman v. City of Riviera Beach, Fla.*, 133 S. Ct. 735, 745 (2013).

[12]*Id.* at 741, 744-45.

products midstream between ships and barges in the Mississippi River. Plaintiff describes the transfer procedure as follows:

> A cargo ship travels up the river, drops anchor, and ties off to one of the buoys. The LMO is moved by tugs from her temporary mooring location (at approximately Mile Marker 132.6) to the anchored ship (generally between Mile Markers 134 and 135). The LMO is then secured by wire lines to both the ship and a crane barge. Barges containing the cargo to be loaded onto the ship are transported by tug to the location and secured to either the LMO or the adjacent crane barge. The crane on the crane barge scoops the cargo from the barges into the hoppers on the LMO, and the LMO's conveyor belt system loads the cargo onto the ship. The LMO is usually manned with a three-person crew to assist in these operations, which consists of a "lead man" and two "deckhands." When the loading operation is completed, the LMO is moved back to her temporary mooring location.[13]

Each time the LMO performs an operation, it is moved by tugboat on the river from its temporary mooring location to one of three different buoys where it will meet the ships and barges to which it will transfer cargo. Therefore, to perform an operation, the LMO must travel on the river for what is a roundtrip of at least three miles.

Plaintiff contends that while making trips on the river to perform its operations, the LMO regularly transports crew members and equipment. In support, Plaintiff provides deposition testimony of four different people testifying that crew members sometimes

[13]Rec. Doc. 96-2, at pg. 3.

ride the LMO as it is pushed by tugboat out to the buoys where it performs operations.[14] Plaintiff also provides deposition testimony that the LMO transports equipment on these trips.[15] Trinity does not offer any specific facts or evidence to rebut these factual attestations.

With regard to its physical characteristics, the LMO has a raked bow and an air-conditioned dining area onboard for its crew. It also has life saving equipment onboard. These characteristics support the LMO's practical capability of transporting people or things over water as a vessel. Furthermore, the LMO is registered as a vessel with the United States Coast Guard. However, Trinity argues that the LMO lacks certain characteristics typically associated with a vessel, including navigational aids, means of mechanical propulsion, and a bilge pump.

The Supreme Court has stated that while lack of self-propulsion "may be a relevant factor" to consider in determining

---

[14]Rec. Doc. 96-5, at pgs. 11-12 (Simpson deposition); Rec. Doc. 96-10, at pg. 4 (Tamplain deposition); Rec. Doc. 96-12, at pg. 2 (Roussel deposition); Rec. Doc. 96-3, at pgs. 11-12 (Gautreaux deposition).

[15]Rec. Doc. 96-5, at pgs. 11-12 (Simpson deposition).

vessel status, it "is not dispositive."[16] In *Michel*, the Fifth Circuit analyzed a special purpose barge which, similar to the LMO, was regularly moved into position by tugboats to transfer bulk cargo midstream from river barges to ocean-going vessels on a six mile stretch of the Mississippi River. The Fifth Circuit classified the barge as a vessel, even though it required a tugboat to travel the river.

Trinity cites *Burchett*, in which the Fifth Circuit distinguished *Michel* and found that a midstream bulk transfer cargo unit was not a vessel.[17] However, unlike the barge in *Michel*, as well as the LMO, the watercraft at issue in *Burchett* did not travel across navigable waters in order to perform its operations, but rather was permanently moored and had not moved in ten years.[18] The Fifth Circuit stated "the fact that the [watercraft at issue] has remained in place for ten years makes it a non-vessel despite our holding in *Michel*."[19] Just as the Fifth Circuit found *Burchett* distinguishable from *Michel*, so too is it distinguishable from the

---

[16]*Lozman v. City of Riviera Beach, Fla.*, 133 S. Ct. 735, 741 (2013) (*citing The Robert W. Parsons*, 191 U.S. 17, 31 (1903)).

[17]*Burchett v. Cargill, Inc.*, 48 F.3d 173 (5th Cir. 1995).

[18]*Id.* at 177.

[19]*Id.*

instant case.

The Court likewise has considered the Fifth Circuit's recent decision in *Mendez* as it pertains to determining a watercraft's practical capability of maritime transportation.[20] At issue in *Mendez* was a floating gas-production spar.[21] The spar was permanently moored to the sea floor and could be moved only after detaching its moorings and severing its pipelines, a process that would take nearly two months at a cost $42 million.[22] In declining to classify the spar as a vessel, the Fifth Circuit stated that the spar "embodies the distinction between theoretical capability, which it has, and practical capability, which it does not."[23]

The Court does not find itself faced with a borderline case where the LMO's practical capacity to transport over water is in doubt.[24] The evidence before the Court establishes that the LMO

[20]*Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316 (5th Cir. 2012) cert. denied, 133 S. Ct. 979 (U.S. 2013).

[21]*Id.*

[22]*Id.* at 319.

[23]*Id.*

[24]As the LMO's capacity to transport over water is not in doubt, the Court does not find it necessary to apply the objective test set forth in *Lozman v. City of Riviera Beach, Fla.*, 133 S. Ct. 735 (2013).

travels on the river, carrying people and/or equipment with significant frequency and minimal expense or effort. As such, the LMO possesses practical capability of maritime transportation, affording it vessel status as a matter of law.

Accordingly;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment on Vessel Status (Rec. Doc. 90),** filed by Defendant Trinity Trading Group, Ltd., is **DENIED;**

**IT IS FURTHER ORDERED** that the **Cross Motion for Partial Summary Judgment on Vessel Status (Rec. Doc. 96),** filed by Plaintiff Sean Gautreaux, is **GRANTED.**

This 11th day of April, 2014.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE