```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

SEAN GAUTREAUX                                    CIVIL ACTION

VERSUS                                            NO: 12-2851

TRINITY TRADING GROUP, LTD.,                      SECTION: "A" (5)
ET AL.
```

### ORDER AND REASONS

The following motions are before the Court: **Motion for Partial Summary Judgment on Contractual Indemnity (Rec. Doc. 92)**, filed by defendant Consolidated Terminals and Logistics Company, a Division of CGB Enterprises, Inc. (hereinafter "CGB"**); Cross Motion for Partial Summary Judgment on Contractual Indemnity (Rec. Doc. 106)**, filed by defendant Trinity Trading Group, Ltd. (hereinafter "Trinity"). The motions, set for hearing on January 29, 2014, are opposed and are before the Court on the briefs without oral argument.

**I.   BACKGROUND**

Plaintiff, in the course of his employment with Trinity, was performing stevedoring services for CGB on the Louisiana Mid-Stream One ("the LMO"), a vessel owned by Louisiana Mid-Stream Terminals,

LLC, when a mooring line suddenly snapped and struck his body. Plaintiff filed suit in this Court on November 29, 2012, seeking damages under the Jones Act and general maritime law for the injuries he allegedly sustained due to this accident.

On August 22, 1994, Trinity and CGB entered into a Barge Service Agreement ("the BSA"), which was in effect at the time of Plaintiff's accident.[1]  Under the BSA, Trinity agreed to provide labor for cleaning, painting, and repair services at CGB's facility in LaPlace, Louisiana.  The BSA also contained an indemnity provision whereby Trinity agreed to indemnify CGB for any claims resulting from injuries Trinity employees may sustain while performing services for CGB.  The applicability of this indemnity provision to the circumstances of Plaintiff's accident forms the basis of the instant cross motions for summary judgment.

CGB's motion seeks dismissal of Trinity's claims against it on the basis that the BSA contractually obligates Trinity to indemnify CGB for any liability related to Plaintiff's accident.  On the other hand, Trinity's motion seeks dismissal of CGB's claims against it on the basis that the indemnity obligations under the BSA are not triggered by the type of work Plaintiff was performing at the time of his accident.

---

[1] Rec. Doc. 92-2.

2

**II. DISCUSSION**

<u>a.) The Parties' Arguments</u>

CGB argues that it established a course of dealing with Trinity under the BSA, so as to incorporate within its terms the stevedoring services that Plaintiff was providing at the time of his accident. While the BSA explicitly provided for Trinity to provide labor for cleaning, painting, and repair services at two specified CGB terminals, CGB contends that the parties' additional business dealings continued to operate under the BSA as their relationship progressed. As such, the BSA grew to cover additional services.

CGB argues that the BSA's provisions allow for services to fall within its terms, in addition to those which are specifically mentioned. CGB references a paragraph from the preface of the BSA, which states the following:

> CGB and [Trinity] desire to enter into this Agreement pursuant to which the employees of [Trinity] will clean, paint and repair river equipment as directed by CGB, at either or both locations, **and perform such additional services as are needed, by CGB, all upon the terms and conditions hereafter set forth[.]**[2]

CGB also references the BSA's section describing Trinity's responsibilities under the agreement, which provides for Trinity to furnish all labor and equipment necessary for:

---

[2] *Id.*, at pg. 1.

3

> the cleaning and repairing of river equipment; the pumping of barges; the performance of fiberglass repair work; the stacking and removing of barge covers; the furnishing of welders/fitters; the furnishing of bobcat operators; **and any other work as mutually agreed to between CGB and [Trinity].**[3]

CGB contends that it and Trinity mutually agreed that Trinity would provide stevedoring services, which consequently fall under the terms and conditions set forth in the BSA.

CGB cites to the deposition of Trinity's president, James Allen, who testified that certain changes to the BSA, such as pay rate increases, were negotiated face to face with CGB supervisors and effectuated by handshake deals, rather than being put into writing. Allen testified that new operations, such as stevedoring services, were likewise agreed upon by handshake deals. CGB argues that the BSA governed these additional services, despite the absence of a written amendment to this effect.[4] CGB also cites to Allen's deposition, where he stated that upon hearing of Plaintiff's injury, he expected Trinity to indemnify CGB, as they had with previous accidents involving Trinity employees.

CGB next argues that, as stevedoring services performed by

---

[3] *Id.*, at pg. 3.

[4] In Allen's deposition, CGB's counsel asked whether the stevedoring services which began after creation of the BSA still operated under the BSA. Trinity's counsel objected to the form of the question. Allen responded: "As far as I know, yes." Rec. Doc. 92-3, at pg. 10.

Trinity employees on the LMO fall within the terms of the BSA, Trinity is required to indemnify CGB for Plaintiff's claims. The indemnity section of the BSA states that Trinity shall:

> protect, defend, indemnify and hold harmless CGB, its parent, subsidiary, and affiliated companies, officers, employees and agents, and their successors and assigns, and their underwriters, as well as any vessel owner and/or charterer, and their underwriters, (hereafter collectively referred to as the "Indemnified Parties"), from and against any and all claims, suits, losses, liabilities, demands, costs, damages or expenses resulting from bodily injury to, or illness of, or loss of services or wages of, or death of employees of [Trinity] or its affiliated companies, contractors or subcontractors, or employees of CGB, and third parties, which may, in any manner, arise from, grow out of, or be connected with, directly or indirectly, the services performed by [Trinity] under this Agreement, without limitation and without regard to the cause or causes thereof, or the sole or concurrent negligence, strict liability or other fault of any of the Indemnified parties.[5]

CGB argues that under this section, CGB, as well as "any vessel owner or charterer," are to be indemnified parties for any claims for bodily injury to a Trinity employee that arise from services Trinity performs for CGB.

Trinity disputes that the stevedoring services Plaintiff was performing on the LMO at the time of his accident fall under the BSA. Trinity points out that at the time of Plaintiff's accident, the BSA did not contain any explicit reference to stevedoring

---

[5]Rec. Doc. 92-2, at pg. 12-13.

5

operations, Louisiana Mid-Stream Terminals, LLC, or the LMO. Trinity argues that as the BSA did not contain any such references, the indemnity obligations contained in the BSA did not cover Plaintiff's accident.  Trinity also argues that while Trinity and CGB may have been operating based on handshake deals, there is no evidence that these deals contained any insurance or indemnity requirements.

Trinity also points to the fact that after Plaintiff's accident took place, Trinity and CGB entered into an agreement to amend the BSA, specifically adding stevedoring operations to the scope of the services provided by Trinity under the BSA, and also specifically adding Louisiana Mid-Stream Terminals, LLC, as an indemnified party.[6]  Trinity argues that had the BSA already covered Plaintiff's stevedoring operations on the LMO, there would have been no need for the amendment.[7]

b.) Law and Analysis

Summary judgment is appropriate only if, "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[6] See Rec. Doc. 92-4.

[7] Dave Simpson, Manager of Gulf Services for CGB, stated in his deposition that the amendment was made in order to satisfy concerns Louisiana Mid-Stream Terminals, LLC, had as to whether CGB was "protected" by Trinity since CGB was using Trinity employees to perform services on the LMO.  Rec. Doc. 106-4.

together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."[8]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[9]  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause,"[10] the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.[11]  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.[12]

A maritime contract "should be read as whole, and a court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is

---

[8]*TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).

[9]*Id.* (*citing Anderson*, 477 U.S. at 255).

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[11]*Id.* (*citing* Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[12]*Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

ambiguous."[13] A contract is unambiguous if "its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation."[14]

> [A] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.[15]

The Court finds the language of the BSA to be unambiguous. Therefore, the Court need not look beyond the text of the BSA.

The Court must construe the indemnity obligations in the BSA to cover the liabilities which reasonably appear to have been contemplated by Trinity and CGB. The BSA provided for Trinity to indemnify CGB for any injuries that Trinity employees sustain while performing services for CGB under the agreement. While the services Trinity performed at that time were expressed in the terms of the BSA, there existed language permitting future services to fall within its terms as well. Based on this language, the Court finds it reasonable to infer that the parties intended to include

---

[13]*Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986) (citations omitted).

[14]*Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n. 6 (5th Cir. 2004) (citation omitted).

[15]*Fontenot*, 791 F.2d at 1214 (citation omitted).

within the indemnity coverage liability for injuries sustained by a Trinity employee while performing stevedoring services for CGB. As such, Plaintiff was performing services under the terms of the BSA at the time of his accident and CGB is entitled to indemnity from Trinity for Plaintiff's claims resulting from the bodily injuries he sustained.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that CGB's **Motion for Partial Summary Judgment on Contractual Indemnity (Rec. Doc. 92)** is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Trinity's **Cross Motion for Partial Summary Judgment on Contractual Indemnity (Rec. Doc. 106)** is hereby **DENIED**.

This 21st day of April, 2014.

								_____
								JAY C. ZAINEY
								UNITED STATES DISTRICT JUDGE